REVISED APRIL 24, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 1, 2008

No. 07-10535

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

WALTER WALMORES RODRIGUEZ

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:06-CR-00109-ALL

Before JONES, Chief Judge, DAVIS and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Walter Walmores Rodriguez pleaded guilty to one count of illegal reentry following removal pursuant to 8 U.S.C. § 1326. In this appeal, he raises several challenges to his sentence. Finding no error, we affirm.

I.

Pursuant to a written plea agreement, Walter Walmores Rodriguez pleaded guilty to illegal reentry after deportation. In July 1995, Rodriguez had pleaded guilty to the charge of distribution of cocaine in the Commonwealth of Virginia and was sentenced to seven years in prison, with four years suspended.

Pursuant to U.S.S.G. § 2L1.2(a), Rodriguez's base offense level for illegal

reentry after deportation was 8. The PSR treated Rodriguez's conviction for distribution of cocaine as a "drug trafficking offense," and assessed a 16-level increase pursuant to § 2L1.2(b)(1)(A). Rodriguez received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21. Rodriguez had a total of three criminal history points, yielding a criminal history category of II. His Guidelines imprisonment range was 41 to 51 months.

Rodriguez objected to any application of the statutory enhancement set out in § 1326(b), contending that his maximum penalty should be two years, not twenty; however, he did concede that the issue was currently foreclosed. Additionally, Rodriguez asserted that a reduction to offense level 18 would be appropriate in this case. Citing United States v. Booker, 543 U.S. 220 (2005), and equal protection principles, Rodriguez argued that he was entitled to the same or substantially similar common downward departure of two to four levels as defendants entering guilty pleas in districts with a fast-track program. Rodriguez further asserted that he qualified for the reduction because he had met the eligibility requirements in that he "pleaded guilty at the earliest possible time, . . . [did] not raise[] any motions contesting any part of his arrest or conviction, and . . . cooperated in all respects in his own prosecution." Rodriguez also contended that the availability of fast-track programs to some but not other similarly situated defendants was "based solely on geographical differences" and is "at odds with the overall Sentencing Reform Act goal of reducing unwarranted sentencing disparity." In response, the PSR asserted that pursuant to United States v. Aguirre-Villa, 460 F.3d 681, 683 (5th Cir. 2006), Rodriguez was not entitled to a reduction for fast-track disposition. Additionally, the PSR noted that to require the district court to vary from the Guidelines based solely on the availability of fast-track programs in other districts would conflict with

Congressional policy and interfere with the Attorney General's prosecutorial discretion.

At the sentencing hearing, Rodriguez reasserted his written objections to the PSR. The court overruled the objections for the reasons set forth in the PSR addendum. Rodriguez's counsel then asked the court to consider a sentence at the bottom of the guidelines range, noting that Rodriguez's criminality was somewhat overstated because the underlying drug-trafficking felony that formed the basis for the sentence enhancement was a single sale of half-a-gram of cocaine to an undercover officer in 1996, and that Rodriguez had no other criminal history aside from a self-reported public intoxication incident that happened in his youth. Speaking on his own behalf, Rodriguez asked for peace and that God bless the judge. The district court then sentenced Rodriguez to 51 months in prison to be followed by three years of supervised release. The court expressed its belief that the sentence adequately addressed the objectives of punishment and deterrence and that the supervised release would offer an additional potential sanction should Rodriguez subsequently be deported and attempt to unlawfully reenter the United States. Rodriguez filed a timely notice of appeal.

## II.

Rodriguez first contends that the district court committed Fanfan error by sentencing him within a framework that limited its ability to vary from the Guidelines, particularly in regards to sentencing disparities arising from fast-track or early disposition programs. Rodriguez asserts that Rita v. United States, 127 S. Ct. 2456 (2007) and Kimbrough v. United States, 128 S.Ct 558 (2007), undermine the line of cases that concluded that Booker, which made the Guidelines purely advisory, did not give sentencing courts the discretion to

impose a non-Guidelines sentence based on disagreement with Congressional and Sentencing Commission policies such as allowing some districts to have fast-track programs while others do not. For the reasons set forth in United States v. Gomez-Herrera, No. 07-10153, decided this day, we reject this argument. Rita and Kimbrough allow a district court to impose a non-Guideline sentence based on disagreement with Guideline policy that results in a sentence greater [and presumably less] than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a). Any sentencing disparity resulting from the implementation of fast track programs in some but not all sentencing jurisdictions results from Congressional, not Guideline, policy. Accordingly, the sentencing disparity is not "unwarranted" within the meaning of 18 U.S.C. § 3553(a)(6).

## III.

Rodriguez next contends that the district court erred in treating his prior drug conviction as a drug-trafficking offense under § 2L1.2. Rodriguez concedes that plain error review is proper because he did not object on this basis below. See FED. R. CRIM. P. 52(b); United States v. Peltier, 505 F.3d 389, 392 (5th Cir. 2007).

Section 2L1.2(b)(1)(A)(i) provides for a 16-step increase in the offense level if the defendant was deported after a felony conviction for a drug trafficking offense for which the sentence imposed exceeded 13 months. The commentary to § 2L1.2 defines a "drug-trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." § 2L1.2, comment. (n.1(B)(iv)).

The Virginia statute at issue in this case makes it unlawful to

"manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give, or distribute a controlled substance . . . ." VA. CODE ANN. § 18.2-248(A) (1992). The statute also provides:

> If such person proves that he gave, distributed or possessed with intent to give or distribute a controlled substance classified in Schedule I or II only as an accommodation to another individual who is not an inmate in a community correctional facility, local correctional facility or state correctional facility . . . or in the custody or an employee thereof, and not with intent to profit thereby from any consideration received or expected nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance, he shall be guilty of a Class 5 felony.

VA. CODE ANN. § 18.2-248(D) (1992)

Rodriguez contends that § 18.2-248(D) authorizes a conviction without proof that the defendant intended to make the underlying offense succeed. According to Virginia case law, § 18.2-248(D) is relevant only to sentencing and allows the defendant to mitigate his punishment; it does not change the offense, which remains distribution regardless of whether an accommodation is involved. See Craddock v. Commonwealth, 580 S.E.2d 454, 462 (Va. App. 2003); McCoy v. Commonwealth, 385 S.E.2d 628, 631 (Va. App. 1989). Rodriguez asserts that a defendant may actually be guilty of only an accommodation, yet be convicted for distribution. He further argues that an accommodation, a form of distribution neither engaged in for profit nor to further a drug dealer's efforts, see VA. CODE ANN. § 18.2-248(D) (1992), encompasses acts broader than those contemplated in § 2L1.2(b)(1), including aiding and abetting; and, thus, § 18.2-248(D) criminalizes conduct that is not considered a "drug trafficking offense" and will not support a § 2L1.2 enhancement.

To determine whether a prior conviction qualifies as a drug trafficking

offense for sentencing enhancement purposes, this court employs the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 602 (1990), and looks to the elements of the prior offense, rather than to the facts underlying the conviction. See United States v. Garza-Lopez, 410 F.3d 268, 273 (5th Cir. 2005). If, however, a defendant has violated a statute that contains multiple disjunctive sections that prohibit conduct that will support a sentence enhancement and other conduct that will not support an enhancement, the court may look to "certain conclusive records made or used in adjudicating guilt" to determine which section applies to the defendant's conviction. United States v. Bonilla-Mungia, 422 F.3d 316, 320 (5th Cir. 2005) (internal quotation marks and citation omitted). Such records include the charging paper, a written plea agreement, the guilty-plea transcript, factual findings by the trial judge to which the defendant assented, and jury instructions. See id.; Shepard v. United States, 544 U.S. 13, 16 (2005) (enhancement under the Armed Career Criminal Act). Courts may not rely on the PSR's characterization of the offense. Garza-Lopez, 410 F.3d at 274. The Government bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement. United States v. Herrera-Solorzano, 114 F.3d 48, 50 (5th Cir. 1997).

Here, the felony indictment charged Rodriguez with the distribution of cocaine. Rodriguez subsequently pleaded guilty to distribution of cocaine, conduct expressly prohibited by the statute. Given the language of the statute and the indictment, it cannot be said that the district court erred in classifying the prior Virginia distribution offense as a drug-trafficking offense. Because there was no error in the district court's interpretation of the guidelines, there

6

can be no plain error.

## IV.

Rodriguez argues next that his sentence is substantively and procedurally unreasonable. The Supreme Court's decision in Gall v. United States, 128 S.Ct. 586 (2007), bifurcated the process for reviewing a sentence. First, appellate courts must ensure that the district court committed no significant procedural error, such as failing to calculate or properly calculate the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) sentencing factors, basing a sentence on clearly erroneous facts, or failing to adequately explain the chosen sentence. Id. at 597. If the sentence is procedurally sound, we must then consider the substantive reasonableness of the sentence under an abuse of discretion standard. Id. A Guidelines sentence, like that the district court imposed on Rodriguez, is entitled to a presumption of reasonableness. Id; United States v. Alonzo, 435 F.3d 551, 554 (5th Cir. 2006).

Rodriguez contends that his sentence was procedurally unreasonable, specifically asserting that the district court erred in failing to address his arguments for a downward departure and in not fully explaining its reasoning for imposing a sentence at the top of the guidelines range. The government argues that plain error review should apply to this issue because Rodriguez did not object to the adequacy of the district court's reasons at sentencing. We need not decide the appropriate level of review, because as explained below, the district court's reasons were sufficient under any standard.

Prior to Rita, this court held that if a district court imposes a sentence within the properly determined guidelines range, little explanation is required. See United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). In Rita, the Court

indicated that more than a brief statement may be required when a district court is presented with nonfrivolous arguments for a sentence outside the Guidelines. 127 S. Ct. at 2468-69. Nevertheless, the Court concluded that the district court's reasons for rejecting the defendant's § 3553(a) arguments for a non-Guidelines sentence were, although brief, legally sufficient. Id. at 2469. Specifically, the court noted that the record made clear that the judge listened to and considered the arguments and evidence but simply found the circumstances insufficient to warrant a sentence below the Guidelines range. Id. The judge said that the range was not "inappropriate" and that a sentence at the bottom of the range was "appropriate." Id. The Court acknowledged that the judge might have said more, but was not required to do so. Id.

Here, the district court's comments at sentencing reflect adequate consideration of the § 3553(a) factors. See Mares, 402 F.3d at 519. At the beginning of the sentencing hearing, the court had before it the PSR, the defendant's objections to the PSR and a statement from the government adopting the matters set forth in the PSR. The defendant stated that his objections were ones the court had seen before, and stood on them as written. In overruling Rodriguez's objections, the district court adopted the findings, reasoning, and Guidelines calculations of the PSR. Rodriguez's counsel argued for a sentence at the bottom or below the guideline range, based on the fact that the aggravated felony that forms the basis for the vast majority of his sentence is for a single sale of half a gram of cocaine in 1996. The defendant had no other significant criminal history. The district court then rejected Rodriguez's request for a below-guidelines sentence and imposed a maximum guidelines sentence, expressly stating its belief that the sentence would "adequately address the objectives of punishment and deterrence." In light of the minimal statement

8

found sufficient in Rita, Rodriguez has not demonstrated that the district court erred with respect to its consideration of the § 3553(a) factors or in the adequacy of its stated reasons.

Rodriguez next contends that his sentence is substantively unreasonable because it does not properly account for all of the § 3553(a) factors. He specifically asserts that his sentence is unreasonable in light of the fact that (1) the underlying conviction that formed the basis of his sentence enhancement involved a mere 0.6 grams of cocaine; (2) his single prior conviction and low criminal history score indicate a low risk of recidivism; (3) the 16-level enhancement overstated the severity of his crime, as evidenced by the fact that a portion of his sentence was suspended and he served just under 13 months; (4) he is in fragile medical condition and has been diagnosed with sickle cell anemia, Hepatitis C, blackouts, and upper respiratory illness; and (5) non-universal fast-track programs create unwarranted sentencing disparities, such that even the Sentencing Commission has recognized that these disparities contravene the goals of the Sentencing Reform Act.[1]  Relevant to Rodriguez's arguments, the § 3553(a) considerations include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, and (2) the need for the sentence reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and (3) the need to avoid unwanted sentencing disparities.  § 3553(a)(1)-(2).

Based on our review of the record, the district court clearly considered and rejected these arguments as a basis for a non-Guideline sentence.  As Rodriguez

---

[1] Each of these factual and legal bases for a different sentence were also presented to the district court either in argument or in the PSR.  Accordingly, we apply the ordinary standard of review to this issue.

was sentenced within a properly calculated Guidelines range, his sentence is entitled to a presumption of reasonableness which we see no reason to disturb.

V.

Rodriguez next contends that his sentence violates his equal protection rights because he did not have the benefit of a fast-track program in the Northern District of Texas, and similarly-situated defendants in jurisdictions with the program could receive lower sentences based simply on arbitrary geographic factors. This court reviews factual findings in equal protection cases for clear error, while legal conclusions are reviewed de novo. Walker v. City of Mesquite, 402 F.3d 532, 535 (5th Cir. 2005).

It is well established that a challenged classification that neither involves a suspect class nor impinges upon fundamental rights is accorded a strong presumption of validity. Flores-Ledezma v. Gonzales, 415 F.3d 375, 381 (5th Cir. 2005). Rodriguez cites no case law holding that the sentencing distinction for aliens in fast-track versus non-fast-track jurisdictions employs a suspect classification. In addition, Rodriguez fails to provide support for his contention that any resulting inequity involves fundamental rights. Therefore, the classification must be upheld if it is rationally related to a legitimate governmental purpose. See Heller v. Doe, 509 U.S. 312, 320 (1993).

Fast-track programs, initially established in district courts along the southwestern United States in order to accommodate the large number of immigration cases, offer defendants some form of sentence reduction in exchange for the waiver of certain procedural rights. United States v. Melendez-Torres, 420 F.3d 45, 52 (1st Cir. 2005). Section 5K3.1 of the Guidelines authorizes up to a four-level reduction for fast-track programs authorized by the United States Attorney General and the United States Attorney for the district in which the

court resides. Fast-track programs are proper only when "clearly warranted by local conditions within a particular district." Id.

This court has not specifically addressed whether the non-application of a fast-track program in a district violates the equal protection clause. However, other circuits have applied the rational basis standard to uphold the use of fast-track programs on a district-by-district basis. See United States v. Campos-Diaz, 472 F.3d 1278, 1280 (11th Cir. 2006) (holding that the fast-track program is rationally related to the legitimate government interest of conserving prosecutorial and judicial resources as well as easing congestion in judicial districts with a high volume of immigration cases); United States v. Marcial-Santiago, 447 F.3d 716, 718-19 (9th Cir. 2006) (holding that fast-track programs are justified by the benefits gained by the Government when defendants plead early in criminal proceedings and noting that Congress authorized early disposition programs without revising the terms of § 3553(a)(6); thus, necessarily providing that any resulting sentencing disparities were warranted); and Melendez-Torres, 420 F.3d at 52 (holding that no equal protection violation exists where the U.S. Attorney General and the U.S. Attorney for the district of Maine were best able to evaluate whether local conditions warranted a fast-track program or whether other reasonably conceivable objectives such as swifter adjudication, greater deterrence, and harsher sentences were more preferable).

Rodriguez's arguments are conclusory in nature. He does not show that this issue involves either a suspect class or fundamental rights, and does not provide any case law or reliable empirical evidence to support his position. Rodriguez cannot establish a violation of his equal protection rights because he has not overcome the strong presumption of the validity of non-application of a fast-track program.

## VI.

In light of Apprendi v. New Jersey, 530 U.S. 466 (2000), Rodriguez challenges the constitutionality of § 1326(b)'s treatment of prior felony and aggravated felony convictions as sentencing factors rather than elements of the offense that must be found by a jury. This argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 235 (1995). United States v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007), cert. denied, 2008 WL 59441 (Jan. 7, 2008) (No. 07-6202).

## VII.

For the foregoing reasons, Rodriguez's sentence is AFFIRMED.